

12-CV-05125-CMP

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JEFFREY R. McKEE,

              Plaintiff,

    v.

ROB McKENNA, Washington State Attorney General;
TIMOTHY LANG, Senior Assistant Attorney General;
SARA DI VITTORIO, Assistant Attorney General (AAG);
AMANDA MIGCHELBRINK, AAG; ELDON VAIL, ex-
Washington State Dept. of Corrections (WDOC)
Secretary; DAN PACHOLKE, WDOC Deputy Director;
DEVON SCHRUM, WDOC Grievance Program Manager;
PAT GLEBE, Stafford Creek Corrections Center (SCCC)
Superintendent; KERRY ARLOW, SCCC Associate
Superintendent; CHARLES L. JONES, SCCC
Corrections Program Manager; DENNIS DAHNE, SCCC
Grievance Coordinator; DONALD BLOOMBERG, SCCC
Intelligence & Investigations Unit; DENNIS CHERRY,
SCCC Custody Unit Supervisor; GREGORY F. JONES,
SCCC Custody Unit Supervisor; NORMAN
GOODENOUGH, SCCC Counselor; SHANE M. REVEL,
SCCC Counselor; SERGEANT POE, SCCC Sergeant;
ABRAM CLARK, SCCC Property Room Sergeant;
KEVIN SWOPE, SCCC Property Room Sergeant;
TODD E. GOODWIN, SCCC H-Unit Sergeant; TIMOTHY
McCANDLESS, SCCC Sergeant; RICHARD BARRETT,
SCCC Corrections Officer (C/O); C/O TODD, SCCC C/O,

              Defendants.

FILED _____ LODGED
_____ RECEIVED

FEB 10 2012

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY

C12-5125 RJB/ KLS

COMPLAINT WITH
JURY DEMAND

## I. JURISDICTION, PARTIES and VENUE

    1.1  This court has jurisdiction over the federal constitutional claims herein

pursuant to 28 USC §§ 1331(1), 1343 and 1983.  This court has supplemental

jurisdiction over the state law tort claims herein pursuant to 28 USC § 1367.

COMPLAINT - 1

Jeffrey R. McKee 882819, pro se
Coyote Ridge Corrections Center
PO BOX 769 HA38
Connell, Wa 99326
(509) 543-5800

1.2  Plaintiff JEFFREY R. MCKEE is currently in Washington State Department of Corrections (WDOC) custody at the Coyote Ridge Corrections Center (CRCC) in Connell, Washington.  When the events described herein transpired, plaintiff McKEE was housed at the Stafford Creek Corrections Center in Aberdeen, Washington and the Airway Heights Corrections Center (AHCC) in Airway Heights, Washington.  He is United States citizen and a resident of Washington State.

1.3  Defendant ROB McKENNA is the duly elected Attorney General of Washington State (AG).  He was required to and did take an oath to follow and enforce the laws of Washington State and the United States pursuant to RCW 43.01.020.  Defendant McKENNA has a duty to obstruct Washington State public officials who are about to or who do violate the said laws pursuant to <u>State ex rel. Dunbar v. Board of Equalization</u>, 140 Wash. 433 (1926).  He has supervisory and policy-making authority over every employee of the Washington State Attorney General's Office (AGO).

1.4  Defendant TIMOTHY LANG is a Senior Assistant Attorney General (SAAG) and the supervisor of the AGO's Criminal Justice Division (CJD).  He has supervisory and policy-making authority over all AAG's who are assigned to the CJD.

1.5  Defendant SARA J. DIVITORIO is an AAG who is assigned to the CJD at the AGO.

1.6  Defendant AMANDA MIGCHELBRINK is an AAG who is assigned to the CJD at the AGO.

1.7  Defendant ELDON VAIL was the WDOC Secretary when certain events complained of herein occurred.  He had supervisory and policy-making authority over all WDOC employees.  As WDOC Secretary, defendant VAIL was required to take an oath to follow the laws of Washington State and the United States pursuant to RCW 43.17.030.

Jeffrey R. McKee 882819, pro se
Coyote Ridge Corrections Center
PO BOX 769 HA38
Connell, Wa 99326
(509) 543-5800

1      1.8  Defendant DAN PACHOLKE is now a WDOC Deputy Director of Prisons and

2  his region includes all WDOC facilities in Western Washington.  At times material to this

3  complaint, he was the SCCC Superintendent.  As Deputy Director, defendant

4  PACHOLKE has supervisory and policy-making authority over all WDOC employees

5  except defendant VAIL.

6      1.9  Defendant DEVON SCHRUM was a WDOC Grievance Program Manager

7  (GPM) when some of the events complained of herein occurred.  She no longer holds

8  that position.

9      1.10  Defendant PAT GLEBE is the SCCC Superintendent.  He has supervisory

10  and policy-making authority over all SCCC employees.

11      1.11 Defendant KERRY ARLOW was an SCCC Associate Superintendent at

12  times material to this complaint.  As such, she had supervisory and policy-making

13  authority over all SCCC employees except for defendant GLEBE.

14      1.12  Defendant CHARLES L. JONES is an SCCC Corrections Program

15  Manager (CPM).  He has supervisory and policy-making authority over all WDOC

16  administrative staff assigned to the housing units McKEE was housed in when the

17  events described herein occurred.

18      1.13  Defendant DENNIS DAHNE was an SCCC Grievance Coordinator (GC)

19  when the events described herein occurred.

20      1.14  Defendant DONALD BLOOMBERG is an Investigator assigned to the

21  SCCC Intelligence & Investigations Unit (IIU).

22      1.15  Defendant DENNIS CHERRY was an SCCC Custody Unit Supervisor

23  (CUS) assigned to H-3 Unit when the events described herein occurred.  As such, he

24  had supervisory authority over defendant GOODWIN.

25

Jeffrey R. McKee 882819, pro se
Coyote Ridge Corrections Center
PO BOX 769 HA38
Connell, Wa 99326
(509) 543-5800

COMPLAINT - 3

1.16  Defendant GREGORY F. JONES was an SCCC CUS  assigned to F-Unit when some of the events described herein occurred.  He had supervisory authority over defendant GOODENUGH.

1.17  Defendant NORMAN GOODENOUGH is an SCCC Corrections Counselor Three (CC3) who was assigned to F-Unit when some of the events described herein occurred.

1.18  Defendant SHANE REVEL is an SCCC CC2 who was assigned to F-Unit when some of the events described herein occurred.

1.19  Defendant POE is an SCCC line Sergeant (Sergeant) who was assigned to H-2 Unit when some of the events described herein occurred.

1.20  Defendant ABRAM CLARK is an SCCC Property Sergeant

1.21  Defendant KEVIN SWOPE was an SCCC Property Sergeant when some of the events described herein occurred.

1.22  Defendant TODD E. GOODWIN was an SCCC Sergeant assigned to H3-Unit when the events described herein occurred.

1.23  Defendant TIMOTHY J. McCANDLESS was an SCCC Sergeant assigned to H3-Unit when the events described herein occurred.

1.24  Defendant RICHARD BARRETT was an SCCC Corrections Officer (C/O) when the events described herein occurred.

1.25  Defendant C/O TODD was an SCCC C/O when the events described herein occurred.

//

//

//

//

COMPLAINT - 4

Jeffrey R. McKee 882819, pro se
Coyote Ridge Corrections Center
PO BOX 769 HA38
Connell, Wa 99326
(509) 543-5800

## II. OPERATVE FACTS

2.1  Plaintiff McKEE has been held in WDOC custody since July, 2005.

2.2  Since being taken into WDOC custody, McKEE has filed numerous meritorious grievances and lawsuits against Washington State and WDOC employees.

2.3  Some Washington State judges, court officers and Assistant Attorneys General have publically opinioned that McKEE is competent litigator.

2.4  At all times material to this complaint, each of the defendants knew McKEE was actively pursuing meritorious grievances and litigation against WDOC staff.

2.5  The defendants, and each of them, along with others unknown, conspired together to obstruct, delay, impede, deter, chill and defeat meritorious prisoner grievances and civil actions as a litigation strategy.  The strategy is aimed at withholding legal remedies from prisoners who have suffered injury when their rights have been violated, as well as avoidance of Washington State liability.  The agreement is compartmentalized; each of the said defendants furthers it by setting up and/or carrying out systematic mechanisms designed to advance the above goals of the conspiracy. Some of the defendants know about the overall conspiracy and some know only about their compartment, to varying degrees.  Attached and incorporated as APPENDIX A is a statement of the compartments that make up the conspiracy described above.

### First Illegal Infraction Proceeding

2.6  In the furtherance of the litigation strategy described in paragraph 2.5, above, defendants TODD, POE, McCANDLESS, THAUT and others unknown conspired together to infract and punish McKEE for serving legal notice on staff on behalf of another inmate.  The staff member McKEE served was defendant McCANDLESS.

Jeffrey R. McKee 882819, pro se
Coyote Ridge Corrections Center
PO BOX 769 HA38
Connell, Wa 99326
(509) 543-5800

1   2.7  Shortly before McKEE served McCANDLESS as described above, WDOC

2   Headquarters issued an official statement that inmates were allowed to serve papers on

3   staff for other inmates.  Even thought he knew what McKEE had done was not against

4   the rules, defendant TODD issued a fraudulent infraction against McKEE for serving

5   defendant McCANDLESS as described above.

6   2.8  Defendant POE then conducted the hearing on defendant TODD's infraction.

7   When he did so, defendant POE violated WAC 137-28-280 and WDOC policy 460.000

8   because he did not have the authority to hold any disciplinary hearing.  Only staff of the

9   rank of "lieutenant or higher" are allowed to hold hearings under these regulations.

10   2.9  In holding the hearing described above, defendant POE  violated WAC 137-

11   28-230(4) and WDOC policy 460.000 by refusing to allow McKEE to present witness

12   statements in his defense.

13   2.10  On the basis of the unlawful hearing described above, defendant POE

14   found McKEE "guilty" and imposed five (5) days of "cell confinement" as a sanction.

15   2.11  Even though he knew the infraction and hearing were illegal, defendant

16   THAUT upheld the "guilty" finding and sanction on appeal.

17   2.12  When the defendants infracted and sanctioned McKEE for doing what he

18   had been authorized to do, they violated Washington Administrative Code (WAC) 137-

19   28-370(1), which prohibits WDOC staff from imposing sanctions where notice of

20   proscribed conduct has not been afforded to the inmate.

21   <u>Illegal Cell Search, Seizure Of Evidence And Infraction</u>

22   2.13  On March 23, 2009, defendants GOODWIN, BARRETT and BLUMBERG

23   conspired together to search of McKEE's cell, infract and sanction him, then to seize,

24   withhold and destroy his authorized legal materials.

25

Jeffrey R. McKee 882819, pro se
Coyote Ridge Corrections Center
PO BOX 769 HA38
Connell, Wa 99326
(509) 543-5800

1    2.14  Defendant GOODWIN knowingly and intentionally requested that

2  defendants BARRETT and BLUMBERG search McKEE's cell on a fraudulent basis.

3  Defendant GOODWIN made the request because he claimed that McKEE had been

4  found in possession of unauthorized legal materials with other inmates' names on them,

5  when in fact all of the documents McKEE had were "authorized" by WDOC policy

6  590.500(V)(D) and 450.100.

7    2.15  Defendants BARRETT and BLUMBERG agreed and did, in fact, conduct

8  the requested search of McKEE's cell.  When they did the search, they found a folder

9  that contained a declaration that McKEE had obtained from Inmate Toby Masse.  The

10  Masse declaration was evidence needed to support McKEE's civil rights action and

11  criminal appeal.

12    2.16  Based on the Masse declaration, defendant BARRETT infracted McKEE

13  alleging that he violated WAC 137-28-220(053), which prohibits "(p)ossession of

14  anything not authorized for retention or receipt by an inmate and/or not issued to an

15  inmate by regular institutional channels".

16    2.17  Prior to the cell search described in paragraph 2.15, above, McKEE was

17  officially notified by the published WDOC Policy Glossary that authorized "legal

18  materials" included "documents from cases other than [his own] case".  The Masse

19  declaration fell within the WDOC definition of authorized "legal materials".

20    2.18  Prior to the cell search described in paragraph 2.15, above, McKEE was

21  officially notified by the authorized May 24, 2004 version of WDOC policy 590.500(V)(D)

22  that he was allowed to possess "approved third-party legal materials" and that WDOC

23  would provide him a stamp to distinguish these documents.  The Masse declaration fell

24  within the WDOC policy 590.500(V)(D) definition of "approved third-party legal

25  materials".

Jeffrey R. McKee 882819, pro se
Coyote Ridge Corrections Center
PO BOX 769 HA38
Connell, Wa 99326
(509) 543-5800

1    2.19  Prior to the cell search described in paragraph 2.15, above, McKEE was

2  officially notified by WDOC policy 450.100 that he was allowed to obtain and possess

3  witness statements from other inmates.  The Masse declaration fell within the WDOC

4  policy 450.100 definition of other inmate witness statements.

5    2.20  Prior to the cell search described in paragraph 2.15, above, defendants

6  McKENNA, LANG, DI VITTORIO, MIGCHELBRINK, VAIL, PACHOLKE, GLEBE,

7  CHERRY, GOODWIN and others unknown knew that WDOC and AGO staff had

8  previously conceded that inmates are allowed to possess declarations of other inmates.

9  This concession occurred in the litigation of <u>Burton v. Tremaine, et al.</u>, Grays Harbor

10  County Superior Court No. 05-2-00669-9, in which the AGO represented WDOC staff

11  against an inmate's claim that when WDOC confiscated the affidavit he had from

12  another inmate, and when they sanctioned him for possessing it, they violated his rights.

13    2.21  McKEE repeatedly notified defendants VAIL, PACHOLKE, GLEBE,

14  CHERRY and GOODWIN that the confiscation of the Masse declaration and the

15  infraction for his possession of it was illegal.  In spite of each of these defendants being

16  on actual notice of the reasons why McKEE was authorized to possess the Masse

17  declaration, each of them participated in and/or allowed the seizure and ongoing

18  withholding of the same, as well as the infraction against McKEE.

19    2.22  Defendants McKENNA, LANG, DI VITTORIO, MIGCHELBRINK, VAIL,

20  PACHOLKE, GLEBE, CHERRY, GOODWIN and others unknown failed to train WDOC

21  staff on the parameters of McKEE's right to possess legal materials.  Because they

22  knew inmate possession of legal materials that included other prisoners' names was an

23  issue that would come up repeatedly and had resulted in civil rights violations in the

24  past, the defendants knew or should have known that failing to train staff on the issue

25  would result in violations of the constitutional rights of inmates like McKEE.

Jeffrey R. McKee 882819, pro se
Coyote Ridge Corrections Center
PO BOX 769 HA38
Connell, Wa 99326
(509) 543-5800

1       2.23  The failure to train described in paragraphs 2.22, above, was knowing and

2  intentionally perpetrated for the purpose of furthering the conspiratorial goals described

3  in paragraph 2.5, above.

4       2.24  Defendant ROTHWELL subsequently conducted the hearing on defendant

5  BLUMBERG's infraction.  When he did so, defendant ROTHWELL violated WAC 137-

6  28-280 and WDOC policy 460.000 because he did not have the authority to hold any

7  disciplinary hearing.  Only staff of the rank of "lieutenant or higher" are allowed to hold

8  hearings under these regulations.

9       2.25  In holding the hearing described in paragraph 2.24 and 2.25, above,

10  defendant ROTHWELL violated WAC 137-28-230(4) and WDOC policy 460.000 by

11  refusing to allow McKEE to present witness statements in his defense.

12       2.26  On the basis of the unlawful hearing described in paragraphs 2.24 and

13  2.25, above, defendant ROTHWELL found McKEE "guilty" and imposed 10 days "cell

14  confinement" and 20 days "loss of typewriter.  In imposing these sanctions, defendant

15  ROTHWELL was furthering the conspiratorial goals described in paragraph 2.5, above.

16 <u>Third Illegal Infraction Proceeding</u>

17       2.27 In addition to pursuing his own legal claims, McKEE actively helped other

18  inmates with their complaints and legal actions.

19       2.28  In the furtherance of the conspiracy described in paragraph 2.5, above,

20  defendant DAHNE issued an unauthorized written directive to McKEE that he cease

21  and desist from helping other inmates with their official WDOC grievances.

22       2.29  One of defendant DAHNE's duties as an SCCC Grievance Coordinator was

23  to assist inmates in the drafting and presentation of their official WDOC grievances.

24  Inmate Larry Givens was an illiterate prisoner who could not write his own grievance for

25  processing.  When Mr. Givens asked defendant DAHNE for help, he refused.

Jeffrey R. McKee 882819, pro se
Coyote Ridge Corrections Center
PO BOX 769 HA38
Connell, Wa 99326
(509) 543-5800

COMPLAINT - 9

2.30  Because defendant DAHNE refused to perform his duty to assist Mr. Givens, McKEE assisted him instead.  The complaint Mr. Givens was attempting to pursue was a grievance about SCCC staff illegally denying him photocopies of his legal pleadings for filing in court.  Pursuant to the authorized May 24, 2004 version of WDOC policy 590.500, SCCC staff were required to make the photocopies Mr. Givens requested.

2.31  When defendant DAHNE learned that McKEE had assisted Mr. Givens with his grievance, he issued an infraction alleging that he violated WAC 137-28-220(103), which prohibits "refusing or failing to follow an order, oral or written".

2.32  When defendant DAHNE issued the infraction described in paragraph 2.31, above, he knew McKEE was authorized to assist Mr. Givens with his grievance. Defendants DAHNE and SCHRUM conspired together to punish and intimidate McKEE for helping other inmates with their grievances, however, by agreeing that defendant DAHNE would order McKEE not to assist others and then infract him when he did.

2.33  Prior to assisting Mr. Givens with his grievance, McKEE was officially notified by the authorized May 24, 2004 version of WDOC policy 590.500(V)(D) that he was allowed to assist other inmates in any "legal matter".

2.34  Prior to assisting Mr. Givens with his grievance, McKEE was officially notified by the published WDOC Policy Glossary that a "legal matter" is any process that allows inmates to challenge government action.  Mr. Givens' grievance fell within the WDOC definition of "legal matter".

2.35  At a subsequent hearing, McKEE was found "not guilty" of violating any rule because he was allowed to assist others in their grievances and because defendants DAHNE and SCHRUM did not have the authority to order McKEE to stop doing so.

Jeffrey R. McKee 882819, pro se
Coyote Ridge Corrections Center
PO Box 769 HA38
Connell, WA 99326
(509) 543-5800

1

## Fourth Illegal Infraction Proceedings

2    2.36  Counselor Loren Taylor was McKEE's assigned counselor at the SCCC.

3    2.37  On or about March 15, 2009, C/O Brian Masters informed McKEE that he

4  had overheard a conversation involving defendants CHERRY and DAHNE, along with

5  Ms. Taylor, stating that they were planning on infracting McKEE in order to transfer him

6  out of the institution.  According to C/O Masters, these staff members said they planned

7  to transfer McKEE because of his grievances and lawsuits.

8    2.38  On or about March 15, 2009, McKEE notified defendant CHERRY and Ms.

9  Taylor that he would need legal copies on March 31, 2009 for a mailing deadline that

10  day.  Neither defendant CHERRY nor Ms. Taylor responded in any way.

11    2.39  On March 31, 2009, McKEE presented his legal documents to Ms. Taylor

12  for copying but she refused to make them.  McKEE then addressed the matter with

13  defendant CHERRY and requested the legal copies for his deadline.    Defendant

14  CHERRY stated that he was aware of the legal copy policy but that he would not make

15  the copies anyway.  He said McKEE "could just sue [him]".

16    2.40  When defendant CHERRY refused to make the legal copies as described

17  in paragraph 2.39, above, McKEE submitted an emergency grievance about the issue

18  directly to defendant CHERRY.

19    2.41  After he received McKEE's emergency grievance, defendant CHERRY

20  contacted defendant DAHNE, who joined the conspiracy to deny the legal copies.  No

21  copies were made even though defendants CHERRY and DAHNE knew they were

22  required to provide them.

23    2.42  On April 1, 2009, McKEE gave defendant CHERRY a written request for

24  legal copies again, this time for a different court deadline.  In the request was a

25  statement that an emergency grievance would be filed if CHERRY would not comply.

Jeffrey R. McKee 882819, pro se
Coyote Ridge Corrections Center
PO BOX 769 HA38
Connell, WA 99326
(509) 543-5800

COMPLAINT - 11

2.43  On April 3, 2009, McKEE gave defendant CHERRY another written request for legal copies, again for a different court deadline.  Along with the request was a preemptive emergency grievance on the presumption that CHERRY would not comply again.  Defendant CHERRY responded to the request in writing stating, "I will save this and put it with my other threatening kites I have received."

2.44  On April 7, 2009, McKEE personally served defendant CHERRY with a civil complaint alleging that the repeated failure to provide legal copies was unlawful and retaliatory.  The same day defendant CHERRY was served with the lawsuit, he issued two separate serious infraction reports against McKEE.  Each of the reports alleged separate WAC 137-25-030(663) violations, which prohibit "strong arming" and "intimidation".  One of the infractions was for the April 1st request and the other was for the April 3rd grievance, as described in paragraphs 2.42 and 2.43, above.

2.45  On or about April 15, 2009, C/O Daniels informed McKEE that he had overheard a conversation between defendants CHERRY and GLEBE.  According to Mr. Daniels, they were discussing transferring McKEE out of the institution because of his grievances and lawsuits.

2.46  On April 20, 2009, McKEE had a hearing and was found "not guilty" of defendant CHERRY's two infractions.

2.47  In the furtherance of their conspiracy, defendants CHERRY, DAHNE, GLEBE, ARLOW and GOODWIN had McKEE transferred to the SCCC segregation unit, called "F-Unit".  On April 21, 2009, CHERRY submitted an unsupported "administrative segregation referral" but no reasons were offered in support of the transfer.

2.48  Even though WDOC policy required detailed reasons for segregating any inmate, defendant ARLOW reviewed and approved the transfer on April 22, 2009.

Jeffrey R. McKee 882819, pro se
Coyote Ridge Corrections Center
PO BOX 769 HA38
Connell, WA 99326
(509) 543-5800

1

<u>Illegal Administrative Segregation</u>

2      2.49  On April 21, 2009, McKEE was transferred from H3-Unit to F-Unit at the

3  SCCC.  After he arrived in F-Unit, defendant GOODENOUGH gave McKEE a notice of

4  segregation review form.

5      2.50  Contrary to WDOC policy 320.200, no information was provided to McKEE

6  about what the reasons were for his segregation.  Accordingly, McKEE asked defendant

7  GOODENOUGH why he was in F-Unit?  Defendant GOODENOUGH stated that

8  "officially it's because there is a security threat and safety concerns surrounding you at

9  SCCC but unofficially it's because you are filing grievances and lawsuits, as well as

10  helping other prisoners with similar complaints".

11      2.51  On April 23, 2009, McKEE attended a "segregation review" meeting

12  presided over by defendants GOODENOUGH, REVEL and GREGORY JONES.  At the

13  meeting, defendant GOODENOUGH stated that there was "a separatee" and a "security

14  threat" entered by defendant CHERRY, and that they did "not have any other

15  information" as why McKEE was transferred to F-Unit.  McKEE informed all defendants

16  present that CHERRY placed McKEE in segregation "pending transfer" and in retaliation

17  for the grievances and lawsuits he was pursuing.  In spite of the total lack of valid

18  grounds to keep McKEE in on administrative segregation in F-Unit, defendants

19  GOODENOUGH, REVEL and GREGORY JONES approved the placement anyway.

20      2.52  On April 27, 2009, defendant CHARLES JONES knowingly and

21  intentionally approved McKEE's transfer and F-Unit placement without valid cause or

22  basis.

23      2.53  On April 30, 2009 defendant REVEL provided McKEE a second "notice of

24  segregation  review", which included notice of McKEE's right to witness statements.

25  While he was being served with the notice, McKEE asked defendant REVEL why he

Jeffrey R. McKee, 882819, pro se
Coyote Ridge Corrections Center
PO Box 769 HA38
Connell, WA 99326
(509) 543-5800

COMPLAINT -13

1    was being segregated and transferred.  REVEL stated "because of all the grievances

2  and lawsuits you filed.  You know how it works here.  You start filing grievances and

3  lawsuits and we segregate and transfer you, just like the other inmates who do the

4  same thing.  That way we get you out of here so we don't have to deal with you".

5        2.54  On the "notice of segregation review" form defendant REVEL served on

6  McKEE, he listed Inmate Matthew Silva as a witness for his defense at the meeting.

7        2.55  Even though it is required by WDOC policy 320.200 and WAC 137-32-015,

8  McKEE's requested witness statement from Mr. Silva was never obtained by the

9  defendants.

10        2.56  On April 22, 2009, McKEE appealed his segregation placement and

11  pending transfer to defendant GLEBE, citing the violations and unlawful motivations

12  described above.

13        2.57  On April 28, 2009, GLEBE denied McKEE's appeal without addressing the

14  substance of his claims.

15      <u>Retaliatory Transfer, Misdirection Of Property And Denial Of Court Access</u>

16        2.58  On May 4, 2009, McKEE was transferred from SCCC to the AHCC in

17  Eastern Washington.  Prior to the transfer, defendant SWOPE provided McKEE notice

18  that he had 90 days to pay $210.00 to ship all of his legal files or it would be discarded.

19  With this notice was 14 pages of DOC Form 05-062 RECORD OF OFFENDER

20  PROPERTY showing that McKEE had 14 boxes of "misc[ellaneous] paperwork".

21        2.59  Defendant SWOPE's failure to provide McKEE with an itemized inventory

22  of his property violated WDOC policy 440.000(IX).

23        2.60  McKEE notified defendants GLEBE, GOODENOUGH, CHERRY, REVEL,

24  GREGORY JONES, SWOPE and others unknown that he had numerous deadlines to

25  file pleadings and other documents in pending civil and criminal cases.

Jeffrey R. McKee, 882819, pro se
Coyote Ridge Corrections Center
PO Box 769 HA38
Connell, WA 99326
(509) 543-5800

COMPLAINT - 14

1     2.61  Pursuant to WDOC policy 440.020(l)(B)(1)(a), when an inmate who was

2  being transferred had legal deadlines, all legal papers necessary to comply with those

3  deadlines must be shipped at state expense.  Further, the said papers must be

4  delivered to the transferee-inmate upon arrival at the receiving facility.

5     2.62  In spite of the fact that the defendants identified in paragraph 2.60, above,

6  knew that McKEE had deadlines and needed his legal property, they conspired together

7  to harass and retaliate against him by withholding the same.

8     2.63  On May 4, 2009, in the furtherance of the conspiracy described in

9  paragraph 2.62, above, defendant SWOPE sent two boxes of property on the transport

10  bus with McKEE.  The said boxes contained a total of one (1) pair of shoes and two (2)

11  infraction hearing CD's.  On May 21, 2009, McKEE was issued these two chain boxes;

12  no other items or legal property were shipped.

13     2.64  On May 11, 2009, McKEE sent defendant GLEBE a letter again placing him

14  on notice of all his legal deadlines.  Although defendant GLEBE timely received the

15  letter, he did not respond.

16     2.65  On June 10, 2009, McKEE sent defendant GLEBE a second letter again

17  placing him on notice of all his legal deadlines.  By August 17, 2009, McKEE had not

18  received any response from defendant GLEBE so he filed a grievance about the issue.

19  The grievance was forwarded to the SCCC Grievance Office by AHCC staff.  Defendant

20  DAHNE refused to process the grievance or McKEE's appeal.

21     2.66  On September 9, 2009, defendant GLEBE finally responded to McKEE's

22  June 10th letter, described in paragraph 2.65, above.  In his response, defendant

23  GLEBE conceded the issue and stated that McKEE's legal property would be shipped

24  on the next SCCC transport bus.

25

Jeffrey R. McKee, 882819, pro se
Coyote Ridge Corrections Center
PO Box 769 HA38
Connell, WA 99326
(509) 543-5800

COMPLAINT - 15

1    2.67  On September 17, 2009, defendant GLEBE issued a second response and

2    notified McKEE that the previous September 9th letter, described in paragraph 2.66,

3    above, had been in error.  According to defendant GLEBE, policy did not allow him to

4    order the shipping of McKEE's property.

5    2.68  On September 23, 2009, McKEE sent a letter and enclosed the proper form

6    asking defendant CLARK to ship out McKEE's personal clothing per WDOC policy

7    440.000(XI)(A).  At that time, that policy section mandated that "between July 1, 2009

8    and September 30, 2009, offenders can dispose of personal clothing (i.e., no more that

9    2 – 18"X12"X10" boxes, 15 pounds each) by shipping it, at the [WDOC's] expense, to a

10   non-incarcerated person designated on DOC 21-139 Property Disposition".  Although

11   defendant CLARK timely received McKEE's September 23rd letter, he refused to

12   respond while knowingly and intentionally failing to perform his duty to ship McKEE's

13   personal clothing at all.  McKEE suffered damages as a result of defendant CLARK's

14   refusal to respond, including but not limited to the loss of over $200.00 in clothing.

15   2.69  On October 1, 2009, McKEE sent a letter to defendant CLARK asking for

16   notice of the cost to ship "just [his] legal property".  In the letter, McKEE also asked

17   defendant CLARK to ship his television using $15.00 that SCCC Property Staff had

18   previously required McKEE to put in trust for future shipping.  Although defendant

19   CLARK timely received McKEE's October 1st letter, he refused to respond while

20   knowingly, intentionally failing to perform his duty to provide the requested notice and

21   ship McKEE's television.  McKEE suffered damages as a result of defendant CLARK's

22   refusal to respond, including but not limited to the loss of use and enjoyment of his own

23   television for over 6 months.

24

25

Jeffrey R. McKee, 882819, pro se
Coyote Ridge Corrections Center
PO Box 769 HA38
Connell, WA 99326
(509) 543-5800

COMPLAINT - 16

1    2.70  On November 15, 2009, McKEE had a $35.00 money order deposited on

2  his postage account.  That same day, he sent a letter to defendant CLARK asking for

3  shipping of his typewriter (for legal deadlines), television and radio.

4    2.71  On December 3, 2009, defendant CLARK had McKEE's typewriter, TV and

5  radio shipped to the AHCC at a cost of $18.98.

6    2.72  On December 15, 2009, defendant CLARK and others unknown illegally

7  withdrew $12.16 from McKEE's postage account and shipped 2 boxes of his property

8  without authorization.  In the first box, defendant CLARK sent McKEE's personal

9  clothing to the AHCC, contrary to the instructions described in paragraph 2.68, above.

10  This subjected the clothing to destruction even though McKEE had requested shipping

11  at state expense per policy.  In the second box, several of McKEE's personal items that

12  had never been inventoried by WDOC staff were sent as well.  None of McKEE's legal

13  property was shipped in either of the 2 boxes even though the defendants knew he

14  labored under deadlines, as described above.

15    2.73  The $15.00 McKEE placed in trust for the future shipping of his television

16  was stolen by the defendants and/or their agents.

17    2.74  McKEE had to seek and obtain Washington State superior court orders

18  requiring the shipping of his legal files.  Defendants McKENNA, LANG, DI VITTORIO

19  and MIGCHELBRINK opposed the orders but lost the litigation, which ended in final

20  orders.

21    2.75  On January 29, 2010, pursuant to one of the court orders described above,

22  defendant CLARK shipped the relevant legal files in 2 boxes.

23    2.76  On March 5, 2010, the superior court entered another order requiring the

24  WDOC to ship McKEE's legal files in another specific case.  On March 8, 2010,

25  defendant CLARK shipped another quarter of a box of McKEE's legal files.

Jeffrey R. McKee, 882819, pro se
Coyote Ridge Corrections Center
PO Box 769 HA38
Connell, WA 99326
(509) 543-5800

COMPLAINT - 17

2.77  On about April 4, 2010, while McKEE was litigating the issue of whether he was entitled to shipping of all his remaining legal files, defendant GLEBE – on advisement of defendants McKENNA, LANG, DI VITTORIO, MIGCHELBRINK, VAIL, SCHRUM, ARLOW, CLARK and SWOPE – sent McKEE a letter stating that he was "making an exception" and would be shipping all of his remaining property at state expense.

2.78  On about April 5, 2010, McKEE received 13 boxes of property from defendants GLEBE, McKENNA, LANG, DI VITTORIO, MIGCHELBRINK, VAIL, SCHRUM, ARLOW, CLARK and SWOPE.  The 13 boxes were purported to be all of McKEE's remaining property, although numerous files and documents had been silently withheld.  One of the missing documents was a declaration from a prisoner who stated that a victim/witness in McKEE's criminal case had admitted to him that she had lied to the police and the court.  Also missing were numerous law books, CD's containing electronic images of legal documents, other documentary evidence and numerous files, all of which were needed for the successful pursuit of McKEE's civil cases and to challenge his criminal conviction.  In one of the 13 boxes was large quantity of blank WDOC grievances, kites, postage transfers and money transfer forms, which appeared to be there in place of McKEE's legal property that had been removed.

III. ACTUAL INJURY ALLEGATIONS

3.1  As a proximate result of the illegal acts and omissions of the defendants, McKEE suffered actual injuries that included but were not limited to: (a) dismissal of his criminal appeal because he missed the deadline to file a meritorious "statement of additional grounds" under Washington State Rules of Appellate Procedure (RAP) 10.10; (b) dismissal of McKEE v. WDOC, Thurston County Superior Court Cause No. 08-2-00386-5, a meritorious Public Records Act (PRA) case worth over $120,000.00; (c)

Jeffrey R. McKee, 882819, pro se
Coyote Ridge Corrections Center
PO Box 769
Connell, WA 99326
(509) 543-5800

COMPLAINT – 18

1 | being forced into settlement of numerous meritorious civil actions for $9,000.00 when

2 | the cases were worth over $260,000.00; (d) headaches; (e) mental anguish; (f)

3 | emotional distress; (g) anger; (h) frustration; (i) humiliation; and (j) other injuries and

4 | damages to be proven at trial.

5 | IV. CAUSES OF ACTION

6 | Count One – First Retaliation

7 |     4.1  Paragraphs 1.1 through 3.1 are incorporated by reference as if fully set forth

8 | herein.  When the defendants conspired together to retaliate against McKEE for serving

9 | legal notice as described in paragraphs 2.6 through 2.12, above, they acted arbitrarily,

10 | capriciously and without – or in excess of – any legitimate penological goals.  The said

11 | defendants' acts and omissions therefore violated McKEE's First Amendment right to

12 | freedom from retaliation for his grievance and litigation activities.  McKEE hereby

13 | asserts a cause of action under 42 USC § 1983 and provides notice that he seeks

14 | special findings and damages for each retaliatory act and/or omission of each

15 | responsible defendant, including but not limited to punitive damages.

16 | Count Two – First Due Process Violation

17 |     4.2  Paragraphs 1.1 through 3.1 are incorporated by reference as if fully set forth

18 | herein.  When the defendants conspired together to falsely infract, find "guilty" and

19 | sanction McKEE for doing what he had been authorized to do as described in

20 | paragraphs 2.6 through 2.12, above, they violated his procedural and substantive rights

21 | to freedom from arbitrary and capricious governmental misconduct under the due

22 | process clause of the Fourteenth Amendment.  McKEE hereby asserts a cause of

23 | action under 42 USC § 1983 and provides notice that he seeks special findings and

24 | damages for each due process violation by each responsible defendant, including but

25 | not limited to punitive damages.

Jeffrey R. McKee, 882819, pro se
Coyote Ridge Corrections Center
PO Box 769
Connell, WA 99326
(509) 543-5800

1 Count Three – Second Retaliation

2    4.3  Paragraphs 1.1 through 3.1 are incorporated by reference as if fully set forth

3 herein.  When the defendants conspired together to retaliate against McKEE for

4 possessing authorized legal papers as described in paragraphs 2.13 through 2.26,

5 above, they acted arbitrarily, capriciously and without – or in excess of – any legitimate

6 penological goals.  The said defendants' acts and omissions therefore violated McKEE's

7 First Amendment right to freedom from retaliation for his grievance and litigation

8 activities.  McKEE hereby asserts a cause of action under 42 USC § 1983 and provides

9 notice that he seeks special findings and damages for each retaliatory act and/or

10 omission of each responsible defendant, including but not limited to punitive damages.

11 Count Four – Second Due Process Violation

12    4.4  Paragraphs 1.1 through 3.1 are incorporated by reference as if fully set forth

13 herein.  When the defendants conspired together to falsely infract, find "guilty" and

14 sanction McKEE for doing what he had been authorized to do as described in

15 paragraphs 2.13 through 2.26, above, they violated his procedural and substantive

16 rights to freedom from arbitrary and capricious governmental misconduct under the due

17 process clause of the Fourteenth Amendment.  McKEE hereby asserts a cause of

18 action under 42 USC § 1983 and provides notice that he seeks special findings and

19 damages for each due process violation by each responsible defendant, including but

20 not limited to punitive damages.

21 Count Five – Third Retaliation

22    4.5  Paragraphs 1.1 through 3.1 are incorporated by reference as if fully set forth

23 herein.  When the defendants conspired together to retaliate against McKEE for

24 assisting other prisoners as described in paragraphs 2.27 through 2.35, above, they

25 acted arbitrarily, capriciously and without – or in excess of – any legitimate penological

Jeffrey R. McKee 882819, pro se
Coyote Ridge Corrections Center
PO Box 769
Connell, WA 99326
(509) 543-5800

1  goals. The said defendants' acts and omissions therefore violated McKEE's First

2  Amendment right to freedom from retaliation for his grievance and litigation activities.

3  McKEE hereby asserts a cause of action under 42 USC § 1983 and provides notice that

4  he seeks special findings and damages for each retaliatory act and/or omission of each

5  responsible defendant, including but not limited to punitive damages.

6  Count Six – Fourth Retaliation

7      4.6  Paragraphs 1.1 through 3.1 are incorporated by reference as if fully set forth

8  herein. When the defendants conspired together to retaliate against McKEE for his

9  litigation and grievance activities as described in paragraphs 2.36 through 2.46, above,

10 they acted arbitrarily, capriciously and without – or in excess of – any legitimate

11 penological goals. The said defendants' acts and omissions therefore violated McKEE's

12 First Amendment right to freedom from retaliation for his grievance and litigation

13 activities. McKEE hereby asserts a cause of action under 42 USC § 1983 and provides

14 notice that he seeks special findings and damages for each retaliatory act and/or

15 omission of each responsible defendant, including but not limited to punitive damages.

16 Count Seven – Fifth Retaliation

17     4.7  Paragraphs 1.1 through 3.1 are incorporated by reference as if fully set forth

18 herein. When the defendants conspired together to retaliate against McKEE for his

19 litigation and grievance activities as described in paragraphs 2.47 through 2.78, above,

20 they acted arbitrarily, capriciously and without – or in excess of – any legitimate

21 penological goals. The said defendants' acts and omissions therefore violated McKEE's

22 First Amendment right to freedom from retaliation for his grievance and litigation

23 activities. McKEE hereby asserts a cause of action under 42 USC § 1983 and provides

24 notice that he seeks special findings and damages for each retaliatory act and/or

25 omission of each responsible defendant, including but not limited to punitive damages.

Jeffrey R. McKee 882819, pro se
Coyote Ridge Corrections Center
PO Box 769
Connell, WA 99326
(509) 543-5800

1

## Count Eight – Denial Of Access To Courts

2     4.8  Paragraphs 1.1 through 3.1 are incorporated by reference as if fully set forth

3  herein.  When the defendants conspired together to affirmatively interfere with McKEE's

4  pending meritorious legal actions as described in paragraphs 2.58 through 3.1, above,

5  and when they actually caused the delay, obstruction and dismissal of the same, they

6  violated his right to access the courts.  McKEE hereby asserts a cause of action under

7  42 USC § 1983 and provides notice that he seeks special findings and damages for

8  each affirmative act of obstruction and/or interference of each responsible defendant,

9  including but not limited to punitive damages.

10

## Count Nine – Conversion

11     4.9  Paragraphs 1.1 through 3.1 are incorporated by reference as if fully set forth

12  herein.  When the defendants misdirected, withheld and/or failed to turn over

13  possession of McKEE's property as described in paragraphs 2.58 through 3.1, above,

14  they converted it without lawful authority under Washington State law.  McKEE hereby

15  asserts a cause of action for conversion.

16

## Count Ten – Negligence

17     4.10  Paragraphs 1.1 through 3.1 are incorporated by reference as if fully set

18  forth herein.  When the defendants misdirected, withheld and/or failed to turn over

19  possession of McKEE's property as described in paragraphs 2.58 through 3.1, above,

20  they acted negligently because they violated a duty to promptly deliver inmate property

21  under Washington State law.  McKEE hereby asserts a cause of action for negligence.

22

23

24

25

Jeffrey R. McKee 882819, pro se
Coyote Ridge Corrections Center
PO Box 769
Connell, WA 99326
(509) 543-5800

V. REQUESTS FOR RELIEF

   5.1  Grant McKEE money damages against each defendant separately, in amounts to be proven at trial, including both compensatory and punitive damages.

   5.2  Grant McKEE declarations that the acts and omissions of the defendants violate the United States Constitution and Washington State law.

   5.3  Grant McKEE injunctions prohibiting the defendants from violating his legal rights now and in the future.

   5.4  Grant McKEE his costs, fees, attorney's fees, statutory attorney's fees and any other relief to which he is entitled.

VI. VERIFICATION

   The undersigned declares under penalty of perjury that, based on personal knowledge, the foregoing is true and correct.

   RESPECTFULLY submitted this 7th day of February, 2012.

                                   JEFFREY R. McKEE, plaintiff

Jeffrey R. McKee 882819, pro se
Coyote Ridge Corrections Center
PO Box 769
Connell, WA 99326
(509) 543-5800

# APPENDIX A

APPEDIX A

A. <u>Blanket Indemnification</u>

1.  In the furtherance of the conspiracy described in paragraph 2.5, above,
defendants McKENNA, LANG, DI VITTORIO, MIGCHELBRINK, VAIL, PACHOLKE,
SCHRUM, GLEBE, ARLOW and others unknown created, implemented and maintained
an illegal blanket practice of always representing WDOC employees who are sued
regardless of whether the said defendants acted or failed within the scope of their
duties, in good or bad faith, or with callous or reckless disregard for civil rights.

2.  During defendant McKENNA's term as Washington State Attorney General,
the AGO has never turned down any WDOC employee's request for legal
representation "at the expense of the state".

3.  When a WDOC employee is sued, defendant McKENNA is required by law to
make an individualized determination of whether the defendant who seeks legal
representation acted or failed to act "in good faith [and] within the scope of that person's
official duties" before agreeing to represent them.  See RCW 4.92.070; <u>State v.
Hermann</u>, 89 Wn.2d 349 (1977).  Under the illegal blanket practice described in
paragraph A(1), however, no such individualized determination is ever made; all
requests for legal representation are granted.

4.  Under Washington State Law, defendant McKENNA's decision to represent
any WDOC employee "at the expense of the state" automatically entitles the said
employee to indemnification from liability stemming from the action in which they were
sued.  <u>See</u> RCW 4.92.075.  Therefore, a decision to represent at the commencement of
a legal action is tantamount to a decision to indemnify at its conclusion.

5.  In concert with defendant McKENNA's unlawful blanket representation
practice, defendant VAIL promulgated an official policy that notifies WDOC employees
that they will automatically enjoy complete indemnification "(w)hen they have been

1  represented by the [AGO] and a judgment has been entered the employee". <u>See</u>

2  WDOC Policy 130.200.  WDOC employees are never notified that they are not entitled

3  to be represented by the AGO at the expense of the state when they act or fail to act

4  outside the scope of their duties, in bad faith or in a manner which warrants punitive

5  damages.

6      6.  The combination of defendant McKENNA's unlawful blanket representation

7  practice and defendant VAIL's universal indemnification policy resulted in WDOC

8  employees being placed on official notice that they will never be held financially

9  responsible for their illegal acts or omissions, even when they intentionally violate laws,

10  rules or regulations.  Therefore, the said combination encourages WDOC employees to

11  violate the law and prisoners' rights with a sense of impunity.

12      7.  When defendants McKENNA, LANG, DI VITTORIO, MIGCHELBRINK, VAIL,

13  PACHOLKE, SCHRUM, GLEBE, ARLOW indemnified all WDOC employees as

14  described above, they did so in bad faith because they knew: (a) that it encouraged law

15  violations by WDOC employees; (b) that it violated RCW 4.92.070; and (c) that it

16  created an unlawful conflict of interest in violation of American Bar Association (ABA)

17  ethical standards.  <u>See</u> RCW 2.48.230.  Therefore, the said defendants are liable for the

18  illegal acts and omissions of the defendants they approved for representation under

19  <u>Trevino v. Gates</u>, 99 F.3d 911 (9th 1996) and <u>Cunningham v. Gates</u>, 299 F.3d 1271,

20  1292-93 (9th 2000).

21          B.  <u>Fraudulent Representation Tactics</u>

22      8.  In the furtherance of the conspiracy described in paragraph 2.5, above,

23  defendants McKENNA, LANG, DI VITTORIO and MIGCHELBRINK, along with their

24  agents or colleagues, maintain an informal custom of utilizing fraudulent and illegal

25  discovery in defending WDOC employees against <u>pro se</u> prisoner litigation.

9.  The defendants listed in paragraph B(8), above knowingly, intentionally and regularly utilize U.S. mail to send prisoner-litigants incomplete, misleading and unlawful discovery responses in civil cases.  This includes but is not limited to standard practices of mailing blanket objections to paper discovery and responses to interrogatories that have not been verified under oath, contrary to Fed.R.Civ.P. 33 and Washington State Court Rules, Civil Rule 33.  The use of the improper objections and unverified responses to interrogatories is designed to allow the said defendant s and WDOC employees to avoid liability, and to falsify their responses, without being subject to the penalties of perjury.

## C. Failure to Train

10.  In the furtherance of the conspiracy described in paragraph 2.5, above, defendants McKENNA, LANG, DI VITTORIO, MIGCHELBRINK, VAIL, PACHOLKE, SCHRUM, GLEBE, ARLOW and others unknown knowingly and intentionally maintained a practice of failing to train AAG's and WDOC employees regarding prisoners' civil or legal rights.

## D. Failure to Discipline

11.  In the furtherance of the conspiracy described in paragraph 2.5, above, defendants McKENNA, LANG, DI VITTORIO, MIGCHELBRINK, VAIL, PACHOLKE, SCHRUM, GLEBE, ARLOW, CHARLES JONES, DENNIS CHERRY, GREGORY JONES, SERGEANT POE, SERGEANT CLARK, SERGEANT SWOPE and others unknown knowingly and intentionally fail to discipline AAG's and WDOC employees who violate prisoners' rights.

12.  The practice of failing to discipline that is described in paragraph D(11), above, has the effect of encouraging the conspiratorial goal in paragraph 2.5, above.

1

E. <u>Inadequate Legal Access</u>

2      13.  In the furtherance of the conspiracy described in paragraph 2.5, above,

3  defendants McKENNA, LANG, DI VITTORIO, MIGCHELBRINK, VAIL, PACHOLKE,

4  SCHRUM, GLEBE, ARLOW, CHARLES JONES, DENNIS CHERRY, GREGORY

5  JONES, SERGEANT POE, SERGEANT CLARK, SERGEANT SWOPE and others

6  unknown knowingly and intentionally maintain inadequate legal access schemes in

7  every major WDOC facility throughout the state, contrary to minimum Washington State

8  and federal law requirements.

9      14.  Under Washington State law and WDOC Policy 590.500, all major facilities

10  like the WSP, SCCC and WCC must maintain a "primary law library". All "primary law

11  libraries" are required to contain "legal materials consistent with the guidelines

12  established by the American Association of Law Libraries for Prisoners" (AALLP).

13  Further, WDOC Policy 590.500 incorporates American Correctional Standards (ACA) 4-

14  4274 and ACA 4-4276 by reference.  ACA 4-4276 mandates that all WDOC inmates

15  have access to appropriate law libraries to access the courts "in connection with civil

16  legal problems", pursuant to ACA 4-4274.  None of the said major WDOC facilities keep

17  the materials and services required by Washington State law and WDOC Policy

18  590.500.

19      15.  In addition, the defendants listed in paragraph E(13), above, maintain a

20  practice of knowingly and intentionally trying to frustrate inmates who attempt to access

21  the courts or seek redress of grievances by denying legal copies that are mandated by

22  WDOC Policy 590.500.

23

F. <u>Denial of Administrative Remedy</u>

24      16.  In the furtherance of the conspiracy described in paragraph 2.5, above,

25  defendants McKENNA, LANG, DI VITTORIO, MIGCHELBRINK, VAIL, PACHOLKE,

SCHRUM, GLEBE, ARLOW, DAHNE and others unknown knowingly and intentionally maintain a practice of systematically obstructing exhaustion of prisoners' administrative remedies as a defense against prisoner litigants.

17. The system of obstructing exhaustion described in paragraph F(16), above, consists of a variety of tactics AGO and WDOC staff have refined over years of experience. It includes but is not limited to:

a. Refusing to process grievances in accordance with WDOC Policy 590.500 and the "Offender Grievance Program Manual";

b. Delaying responses beyond allowable timeframes;

c. Failing to deliver responses to grievants so they miss appeal deadlines;

d. Intentionally maintaining an unverifiable system of delivering official WDOC grievance responses to grievants, so there is no means of proving whether or when responses are received by the grievant;

e. Falsifying grievance responses and findings to avoid WDOC liability;

f. Issuing misleading grievance responses and findings to confuse uninformed or uneducated grievants;

g. Censoring grievances by prohibiting the citation of case law, statutes or other law to avoid notice;

h. Allowing grievance Coordinators (GC's) to order grievants to "re-write" their complaints to meet unnoticed, arbitrary and capricious standards imposed at the unfettered discretion of GC's; and

i. Harassing and retaliating against prisoners who elect to pursue official grievances.

G. Obstruction, Retaliation And Harassment

18.  In the furtherance of the conspiracy described in paragraph 2.6, above, defendants McKENNA, LANG, DI VITTORIO, MIGCHELBRINK, VAIL, PACHOLKE, SCHRUM, GLEBE, ARLOW, CHARLES JONES, DAHNE, BLUMBERG, CHERRY, GREG JONES, GOODENOUGH, REVEL, POE, CLARK, SWOPE, GOODWIN, McCANDLESS, BARRETT, TODD and others unknown  knowingly and intentionally engaged in systematic obstruction, retaliation and harassment against WDOC prisoners who attempted to access the courts or petition the government for redress of grievances, contrary to ACA 4-4274, WDOC Policy 550.100 and federal law.

19.  The pattern and practice of obstruction, retaliation and harassment described in paragraph G(18), above, includes but is not limited to the employment of:

a.    Repeated cell searches;

b.    Falsified, unnecessary and/or petty infractions;

c.    Transfers from cell-to-cell, unit-to-unit, prison-to-prison and state-to-state;

d.    Refusing to ship inmate legal materials and court-access implements from one prison to the next (to include files, typewriters, witness and attorney contact information and the like) after intra-prison transfers;

e.    Arbitrary, capricious and/or illegal seizure, perusal, copying, withholding and/or theft of prisoner property, including but not limited to legal materials needed to access the courts;

f.    Obstruction of prisoners assisting other prisoners with legal matters;

g.    Prohibiting and/or obstruction of prisoners documenting their claims by exchanging affidavits, declarations and witness statements, including but not limited to the illegal seizure, withholding and/or destruction of such documents from prisoners by WDOC employees;

APPENDIX A

h.   Denial of legal copies mandated by WDOC Policy 590.500 and federal law;

i.   Denial of the use of a normal inmate account, which leads to the denial of access to commissary services and basic hygiene items like soap, shampoo, toothpaste, combs, razors, deodorant and the like; and,

j.   Arbitrary, capricious and/or unlawful deprivation of privileges, including but not limited to jobs, desirable cell-assignments, and minimum access to recreation and exercise, schooling and hobby opportunities.

H. <u>Alternating Top Administrative Officials</u>

20.  In the furtherance of the conspiracy described in paragraph 2.6, above, defendants McKENNA, LANG, DI VITTORIO, MIGCHELBRINK, VAIL, PACHOLKE, GLEBE, ARLOW and others unknown knowingly and intentionally employed a pattern of alternating top WDOC officials, including but not limited to WDOC Secretaries and facility Superintendents, in order to cover up or obfuscate notice of liability issues within the Washington State Attorney General's office and the WDOC.  By constantly and regularly shifting top WDOC administrative officials, the conspirators are able to maintain a façade of plausible deniability that would not exist if those administrators maintained or left positions in the natural course.  As an example, SCCC had about eight (8) Superintendent changes between January 1, 2007 and January 1, 2009.

I. <u>AGO Refusal to Obstruct Illegal Acts By State Employees</u>

21.  In the furtherance of the conspiracy described in paragraph 2.6, above, defendants McKENNA, LANG, DI VITTORIO and MIGCHELBRINK maintain an illegal policy, custom and practice of refusing to obstruct AGO and WDOC employees who violate the law.  Pursuant to <u>State ex rel. Dunbar v. Board of Equalization</u>, 140 Wash. 433 (1926), RCW 43.01.020, RCW 43.10.020 and RCW 43.01.030(2), the said

1  defendants have a duty – on their oaths and bonds – to obstruct Washington state

2  employees who violate the law.

3                        J. Fraudulent Legal Access Policy

4        22.  In the furtherance of the conspiracy described in paragraph 2.6, above, the

5  defendants, and each of them, knowingly and intentionally created, implemented,

6  maintained and/or covered-up the issuance of a forged version of WDOC policy

7  590.500, which is the WDOC policy that specifically establishes  the parameter for

8  prisoner legal access.  The last valid version of WDOC policy 590.500 was signed by a

9  WDOC Secretary in 2000.  In 2004, a valid revision of the 2000 policy was signed by

10 Joseph Lehman, then-Secretary of the WDOC.  The effective date on that valid revision

11 was May 24, 2004.  However, sometime in 2006, WDOC employees illegally forged the

12 policy by removing language from section 590.500(V)(D), which authorized prisoners to

13 possess "approved third-party legal materials" and to exchange it with one another.  The

14 forged version of WDOC policy 590.500 was then forwarded to major WDOC facilities

15 throughout the state with the same 2004 authorizing signature and the same May 24,

16 2004 effective date as the authorized version.  The WDOC policy office substituted the

17 forged version of WDOC 590.500 for the authorized version on the WDOC's computer

18 and intranet system, and paper copies were transmitted to the law librarians of the

19 major WDOC facilities for posting to staff and inmates.  (At that time in 2006, Joseph

20 Lehman was no longer Secretary of the WDOC so he could not have signed the 2006

21 fraudulent alteration of policy 590.500).

22        23.  Inmate Matthew Silva learned of the 2006 forgery described in paragraph

23 J(22), above, in about February, 2006.  After he learned of the forgery, Mr. Silva directly

24 and repeatedly notified defendants McKENNA, LANG, DI VITTORIO, MIGCHELBRINK,

25 VAIL, PACHOLKE, SCHRUM, GLEBE, ARLOW, CHARLES JONES, DAHNE,

1   BLUMBERG, GOODENOUGH and their agents, along with numerous other Washington

2   State officials of the said facts.

3           24.  After being placed on actual notice of the fraudulent alteration of WDOC

4   policy 590.500(V)(D), defendants McKENNA, LANG, DI VITTORIO, MIGCHELBRINK,

5   VAIL, PACHOLKE, SCHRUM, GLEBE, ARLOW, CHARLES JONES, DAHNE,

6   BLUMBERG, GOODENOUGH and others unknown conspired together to cover up the

7   crime by silently revising the forged 2006 version of the policy.  They did so by revising

8   and then re-posting the void instrument with the fraudulently-altered language intact,

9   which occurred in 2008 and then again in 2009.

10          //

11          //

12          //

13          //

14          //

15          //

16          //

17          //

18          //

19          //

20          //

21          //

22          //

23          //

24          //

25          //

Page  -  9                                                    APPENDIX A